MARTIN J. LAWLER (CSBN 77127)
MAXINE BAYLEY (DC 490710)
Attorneys
   Lawler & Lawler
   201 Filbert Street, Suite 400
   San Francisco, California 94133
   Telephone: (415) 391-2010
   FAX: (415) 781-6181
   Email: mlawler@aboutvisas.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Joaquin A. Rodriguez-Torres )<br>Cornelia Steube ) )<br>     Plaintiffs, )<br> )<br>     v. )<br> )<br>Mr. Gerard Heinauer, Director )<br>U.S. Citizenship & Immigration Services )<br>Nebraska Service Center, et al. )<br> )<br>     Defendants. )<br> ) | Civil Case No. 07-CV-03345 TEH<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES SUPPORTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>[FED. R. CIV. P. 56(b), (c)]<br><br>Date: January 7, 2008<br>Time: 10:00AM<br>Location: Courtroom 12 |

This case is about a renowned investment banker, whom Defendant says is in the U.S. national interest, waiting over three and a half years for an "FBI name check" to clear so that he and his wife can become lawful permanent residents. Mr. Rodriguez-Torres finances technology companies. While Mr. Rodriguez-Torres has done everything asked of him to complete his permanent residence application, Defendant has done nothing to complete his FBI name check, the only obstacle to approval, and has left Mr. Rodriguez-Torres and his wife in legal limbo for over three and a half years.

**I. INTRODUCTION**

Pursuant to Fed. R. Civ. P. 56(c), Plaintiffs Joaquin Rodriguez-Torres and Cornelia Steube, through their undersigned counsel, file this Memorandum of Points and Authorities in Support of their Motion for Summary Judgment. Plaintiffs filed a petition for writ of mandamus and complaint under the Administrative Procedures Act (APA) because Defendants have failed to complete the FBI name check needed to adjudicate their applications for permanent residency (filed three years ago) in a "reasonable time." *See* 5 U.S.C. §555(b).

Plaintiffs are entitled to mandamus relief and summary judgment because Defendants have no justification for failing to act within a reasonable time. The harm to Plaintiffs is ongoing. For example, the time Plaintiffs spend waiting for permanent residency does not count towards eligibility for U.S. citizenship, further delaying such benefits as voting and sponsoring other relatives for residency.

Summary judgment should be granted because there is no dispute as to the length of time that Plaintiffs' applications have been pending and because Defendants owe a statutory and regulatory duty to adjudicate Plaintiffs' applications. *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997); *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986); *Singh v. Still*, 470 F. Supp. 2d 1064, 1068 (N.D. Cal. 2006). Plaintiffs' applications must be adjudicated within a "reasonable time." 5 U.S.C. §555(b). A period of three and a half years is far beyond a reasonable time. Plaintiffs therefore request that this Court grant the Motion for Summary Judgment and order Defendants to immediately complete the FBI name check and then adjudicate the applications for permanent residency.

**II. STATEMENT OF UNDISPUTED FACTS**

On June 14, 2004, Mr. Rodriguez-Torres filed an immigrant visa petition (Form I-140), to classify him as an immigrant who is in the national interest. That application was approved on September 8, 2005. On June 14, 2004, Mr. Rodriguez-Torres and his wife, Ms. Cornelia Steube, filed applications for adjustment of status (Form I-485) to obtain permanent residency with the California Service Center of the USCIS in Laguna Niguel, CA.

Between June 14, 2004 and March 7, 2007, Defendant fingerprinted Plaintiffs three times in San Francisco, CA in connection with the adjustment applications.

Defendants' counsel says Ms. Steube's FBI name check has now been completed. However the name check for Mr. Rodriguez-Torres is still not completed. Ms. Steube's permanent residency application cannot be decided until her husband's name check is complete and application adjudicated. Therefore, Plaintiffs' applications remain pending subject to obtaining an FBI name check for Rodriguez-Torres, which were initiated three and a half years ago.

**III. PLAINTIFFS SHOULD BE AWARDED SUMMARY JUDGMENT**

Summary judgment is proper when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323; 106 S. Ct. 2548 (1986). The moving party carries this burden when he or she identifies those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.

In this case, summary judgment is proper because Plaintiffs Rodriguez-Torres and Steube have established that there is no genuine issue regarding Defendants' failure to adjudicate

Plaintiffs' pending applications for permanent residency within a reasonable time, and Plaintiffs are entitled to judgment under the APA as a matter of law.

    **A. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1361 to grant Plaintiffs' request for mandamus relief to compel Defendants to perform their non-discretionary and ministerial duty to adjudicate Plaintiffs' applications**

The District Courts have original jurisdiction of any mandamus action to compel an officer or employee of the United States or any agency thereof to perform a duty owed to a plaintiff. 28 U.S.C. §1361. Mandamus is proper to compel a federal official to perform a duty if (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed to be free from doubt; and (3) no other adequate remedy is available. *Patel v. Reno*, 134 F.3d at 931 *citing Azurin v. Von Raab*, 803 F.2d at 995.

Mandamus is proper in this case, not only because Plaintiffs' claim is clear and certain, but because the Defendants' duty to act on Plaintiffs' permanent residency applications is not discretionary. This duty is plainly prescribed at 8 C.F.R. § 245.2(a)(5):

> The applicant [for permanent residency] *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial…If the application is approved, the applicant's permanent residence *shall* be recorded as of the date of the order approving the adjustment of status. *Id*. at §245.2(a)(5)(i)-(ii). (emphasis added).

The term "shall" creates a mandatory duty upon the subject of the command. *See e.g. United States v. Monsanto*, 491 U.S. 600, 607 (1989); *Pierce v. Underwood*, 487 U.S. 552, 569-70 (1988). While the decision to grant or deny such an application is discretionary, the duty to act is not. *See* 8 C.F.R. §245.2(a)(5).

**IV.   LEGAL ANALYSIS**

    **A.   The Jurisdictional Bar of 8 USC §1252(a)(2)(B)(ii) Applies Only to the Decision Approving or Denying the Application – Not to the Process**

The Real ID Act of 2005, by its provisions at §1252(a)(2)(B)(ii), created controversy as to whether courts have jurisdiction to review the delay in processing applications to adjust status. The majority of courts, including cases reviewing this issue in the Northern District of California, have found jurisdiction by differentiating between the decision itself (grant or deny) and the making of that decision and have gone on to determine whether the delay in deciding the case was reasonable. *Konchitsky v. Chertoff*, 2007 WL 2070325, at *3 (N.D. Cal. July 13, 2007); *Toor v. Still*, 2007 WL 2028407 at *2 (N.D. Cal. July 10, 2007); *Quan v. Chertoff*, 2007 WL 1655601 (N.D. Cal. June 7, 2007); *Fu v. Gonzales*, 2007 WL 1742376 (N.D. Cal. May 22, 2007); *Dmitriev v. Chertoff*, 2007 WL 1319533, at *3 (N.D. Cal. May 4, 2007); *Wu v. Chertoff*, 2007 WL 1223858, at *3 (N.D. Cal. April 25, 2007); *Baker v. Still*, 2007 WL 1393750, at *2 (N.D. Cal. May 9, 2007); *Gelfer v. Chertoff*, 2007 WL 902382 (N.D. Cal. March 22, 2007); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); *Aboushaban v. Mueller*, 2006 WL 3041086, at *2 (N.D. Cal. Oct. 24, 2006); *Razaq v. Poulos*, 2007 WL 61884, at *3 (N.D. Cal. Jan. 8, 2007); *Han Cao v. Upchurch*, 496 F. Supp. 2d 569, 574 (E.D. Pa. 2007); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 156 (D. Mass. 2007); *Li v. Chertoff*, 2007 WL 2123740, at *3 (D. Neb. June 19, 2007); *Pool v. Gonzales*, 2007 WL 1613272, at *2 (D.N.J. June 1, 2007); and *Salehian v. Novak*, 2006 WL 3041109, at *2 (D. Conn. Oct. 23, 2006).

Other courts have found that the decision and the process for making that decision are both discretionary thereby precluding subject matter jurisdiction. *See e.g. Li v. Chertoff*, 482 F. Supp. 2d 1172, 1177 (S.D. Cal. 2007); *Liu v. Chertoff*, 2007 WL 1300127, at *5 (S.D. Cal. April 30, 2007); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007); *Safadi v. Howard*,

466 F. Supp. 2d 696, 698-700 (E.D. Va. 2006); and *Zheng v. Reno*, 166 F. Supp. 2d 875, 880-81 (S.D.N.Y. 2001).

The "strong presumption in favor of judicial review of administrative action" has been a guiding principle for courts examining the reach of §1252(a)(2)(B)(ii). *Koren v. Chertoff*, 2007 WL 1431948 (D.Conn) (citing *Sepulveda v. Gonzales*, 407 F.3d 59, 62 (2d Cir. 2005) (quoting *INS v. St. Cyr*, 533 U.S. 289, 298 (2001); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1141 (9th Cir. 2002). Restrictions on jurisdiction are to be narrowly construed. *Montero-Martinez*, 277 F.3d at 1141. In reviewing the language of §1252, the Ninth Circuit held that Congress intended to strip jurisdiction only over decisions which the statutory language explicitly specifies as wholly discretionary. *Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683 (9th Cir. 2005). The starting place then is an analysis of the law authorizing adjustment of status.

The duty to decide an adjustment application is set out in 8 USC §1255(a):

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification under subparagraph (A)(iii), (A)(iv), (B)(ii), or (B)(iii) of section 1154(a)(1) of this title may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence…

The jurisdiction stripping provision of the Real ID Act, 8 U.S.C. §1252(a)(2)(B), does not insulate Defendants from judicial scrutiny with respect to any aspect of adjustment of status.

> Notwithstanding any other provision of law, no court shall have jurisdiction to review - (i) any *judgment* regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other *decision or action* of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title. [emphasis added]

Rules of statutory interpretation focus first on the plain meaning of the language. Section 1252(a)(2)(B)(ii) applies "in only the specific circumstances where the 'decision or action…is

specified under this subchapter to be in the discretion of the Attorney General…'" *Zafar v. U.S. Atty. Gen.*, 461 F.3d 1357, 1360 (11th Cir. 2006). In considering the import of this language, the Fifth Circuit said, "…the statutory language is uncharacteristically pellucid on this score; it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised under this statute,' but specifically to 'authority for which is specified under this subchapter to be in the discretion of the Attorney General." *Zhao v. Gonzalez*, 404 F.3d 295, 303 (5th Cir.2005) (quoted in *Khan v. U.S. Atty. Gen.*, 448 F.3d 226, 232 (3rd Cir. 2005). Therefore, irrespective of whether processing pace is discretionary (which Plaintiffs contend it is not), the jurisdictional bar does not apply because the pace of adjudication is not "specified…to be in the discretion of the Attorney General."

The "chapter" to which §1255 applies is subchapter II of chapter 12 of Title 8 of the U.S. Code which spans sections 1151 through 1378. *Zafar*, 461 F.3d 1357, 1361 (11th Cir. 2006). "Congress has precisely carved out statutorily-provided discretionary powers" throughout these sections. *Id*. For example, the Attorney General "in his discretion" may waive passport and visa requirements and may authorize immigration officers to record identifying information from residents leaving the country. *Id*. (citing 8 U.S.C. §§1181(b), 1184(d) and 1221(j).) Like denials of motions to continue, Defendants' failure to decide the adjustment applications is "not specified" in 8 U.S.C. §1255 or anywhere else in subchapter II. The language provides that an application may be adjusted or denied, but does not specify any agency authority to fail to act on the application. Thus the express statutory grant of discretionary authority with respect to adjustment applications is limited to the actual adjustment decision.

        1.    <u>The word "action" as used in 8 USC §1255 is synonymous with "decision" and does not include inaction</u>

The USCIS' view of the word "action" is contrary to a plain reading of the statutory language.  The location of the word action in the statutory text is the key to discerning its meaning.  "Action" has the same characteristics of discreteness and finality shared by "judgment" and "decision," the terms immediately preceding it in the statute.  It is clear then that the terms 'judgment,' 'decision' and 'action' are used as synonyms. *See Iddir v. INS*, 301 F.3d 492, 497-498 (7th Cir. 2002).

Even assuming that "action" is not synonymous with "decision," it clearly does not embrace inaction.  "Action" is defined as the "process of doing something" or as a "thing done." *See* Black's Law Dictionary 28 (7th ed. 1999).  It does not include 'inaction' – "to do nothing…delay…" *See* Roget's International Thesaurus, 6th ed. (2001).  It requires a distortion of the meaning of the word 'action' – a word that implies an affirmative step in the adjudication process or an actual decision on the application – to include in its understanding a concept that is just the opposite – inaction.  The bar to review by §1252(a)(2)(B) would apply only if the government granted or denied the application.  The bar does not apply, however, to a properly filed application that simply languishes undecided.  The Court in *Saleem v. Keisler*, 2007 U.S. Dist. LEXIS 80044 (D. Wis. 2007) states:

> Defendant's view that plaintiff is challenging an "action" contradicts not only common sense, but also the court of appeals' interpretation of §1252(a)(2)(B), which makes it clear that the statute does not bar review of a refusal to adjudicate.  In Iddir v. INS, 301 F.3d 492 (7th Cir. 2002), a case that defendants do not acknowledge, the plaintiffs sought a writ of mandamus to compel the INS to adjudicate an application for an adjustment of status under the Diversity Visa Lottery Program.  In that case the Solicitor General conceded that the court had jurisdiction "to hear immigration cases in which the INS wholly fails to adjudicate an applicant's status and either grant or deny relief." Id. at 496.  The court agreed, holding that §1252(a)(2)(B) "only bars review of actual discretionary decisions to grant or deny relief under the enumerated sections, including section 1255." Id. At 497

### 2. Defendants have a nondiscretionary duty to process Plaintiffs' applications

Numerous courts (some cited on page six), have found a nondiscretionary duty to process an adjustment application. In two California cases, the government conceded it had such a nondiscretionary duty to process the plaintiff's I-485 applications under 8 U.S.C. §1255(a). *Singh v. Still*, 470 F. Supp. 2d at 1067; *Gelfer v. Chertoff*, 2007 WL 902382 at *2 (N.D. Cal. March 22, 2007). As the *Gelfer* court explained, there is a difference between the agency's discretion over *how to* resolve an application and its discretion as to *whether to* resolve an application. *Id.* at *2 *citing Singh*, 470 F. Supp. 2d at 1067.

## B. Mandamus Under 28 U.S.C. §1361 Gives the Court Jurisdiction to Review Defendants' Inaction

The Mandamus Act gives the District Courts jurisdiction to compel an officer or employee of the United States or any agency to perform a "duty" owed to the plaintiff. Viewed as a whole, the Immigration and Nationality Act (INA) and its implementing regulations demonstrate that Congress intended to impose on USCIS a nondiscretionary duty to adjudicate all properly filed applications. USCIS, through its regulations, has implemented this Congressional intent.

### 1. Payment of a mandatory fee for adjudication imposes a duty to adjudicate the application

This duty is reflected in the imposition of a mandatory fee for adjudication. The fee carries with it the duty to actually decide the application. Congress intended that USCIS would charge a fee to cover the cost of adjudicating applications for benefits such as those for adjustment. 8 U.S.C. §1356(m). The regulations mandate that a non-refundable adjudication fee for an adjustment application be paid in advance. 8 C.F.R. §103.2(a)(1) and (a)(7). When Plaintiffs' cases were filed, they each paid $305 plus a $70 biometric fee for fingerprinting. This fee was

just increased to $930 for each applicant plus an $80 biometric fee for a total of $1,010. This is a substantial fee in the immigration context. 72 Fed. Reg. 29,851 (May 30, 2007). In the preamble to the rule raising the fee, USCIS justified the increase as needed to insure that the adjudication fee covered the full cost of adjudicating an application.[1]

### 2. Because the INA and regulations impose a duty to issue a decision, they impose a duty to adjudicate the application

The regulatory imposition of a duty to issue a decision necessarily imposes a corresponding duty to adjudicate an application. The duty to decide all applications is explicit in the regulations. *See e.g.* 8 C.F.R. §103.2(b)(19); 8 C.F.R. §245.2(a)(5). Moreover, the INA mandates that USCIS record a non-citizen's lawful admission as a permanent resident "upon approval" of an adjustment application. 8 U.S.C. §1255(b). This implicitly requires the adjudication of the application to determine if it can be approved. Finally, the instructions on the adjustment application form tell the applicant that she will be notified in writing of a decision on the application. [http://www.uscis.gov/files/form/i-485instr.pdf (at 9.)] These instructions are incorporated into the regulations with the same effect. *See e.g.* 8 C.F.R. §103.2(a)(1). The non-discretionary, ministerial duty of notification cannot be carried out unless the application is decided. Accordingly, the duty to make a decision and notify the applicant carries with it the duty to adjudicate the application.

### 3. The remaining regulatory structure demonstrates that USCIS has a duty to adjudicate the application

Other regulations presume that a decision must be made on all applications, thus underscoring the intent discussed above. For example, several regulations dictate how certain applications must be decided. *See* 8 C.F.R. §§ 103.2(b)(12); 103.2(b)(14); 103.2(b)(8)(i). Other

---

[1] The payment of such a large fee for service is also one factor to look at in determining whether the length of time it takes to decide a case is reasonable or not.

MEMORANDUM OF POINTS AND AUTHORITIES IN                              C-07-03345 TEH
SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Page 10

regulations dictate the sequence of the adjudicatory process. *See e.g.* 8 C.F.R. §§103.2(b)(6); 103.2(b)(8)(ii)-(iv); 103.3(a)(1); 103.2(b)(16); 245.2(a)(5). Finally, one regulation specifically imposes a duty on USCIS to make a decision upon the request of the applicant, even in the absence of all requested evidence. 8 C.F.R. §103.2(b)(14). It would make no sense for the government to have imposed on itself a duty to make a decision where not all evidence is submitted, but no duty where all requested evidence is submitted.

### C. The APA Imposes an Independent Duty to Adjudicate the Applications Within a Reasonable Time

Section 555(b) of the APA, 5 USC §555(b), requires that "[w]ith due regard for the convenience and necessity of the parties and their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." A number of courts of appeals have held that Section 555(b) creates a non-discretionary duty to conclude agency matters. *See e.g. Silverman v. NLRB*, 543 F.2d 428 (2d Cir. 1976); *Estate of French v. FERC*, 603 F.2d 1158 (5th Cir. 1979); *Litton Microwave Cooking Prods. v. NLRB*, 949 F.2d 249, 253 (8th Cir. 1991) and *Friends of the Bow v. Thompson*, 124 F.3d 1210, 1220-21 (10th Cir. 1997).

Moreover, §555(b) requires that agency matters be resolved within a reasonable time. A violation of this duty is a sufficient basis for mandamus relief. *See e.g. Sierra Club v. Thomas*, 828 F.2d 783, 797 (D.C. Cir. 1987).

Courts have reached this same result in APA cases brought in the immigration context. *See e.g. Toor v. Still*, 2007 U.S. Dist. LEXIS 53173, *4-5 (N.D. Cal. July 10, 2007); *Yu v. Brown*, 36 F. Supp. 2d 922, 928 (D.N.M. 1999); *Xu v. Chertoff*, 2007 U.S. Dist. LEXIS 50027, *7 (D.N.J. July 11, 2007); and *Haidari v. Frazier*, 2006 U.S. Dist. LEXIS 89177, *9-10 (D. Minn. 2006).

A district court is not precluded from review under the APA because the decision and the adjudication process of an adjustment application are committed to the discretion of the Attorney General. As discussed above, the question of whether to adjudicate an adjustment application is not discretionary and is therefore governed by Section 6 of the APA which requires the government to take action on applications properly filed "within a reasonable time." 5 USC §555(b). To find otherwise would mean that the government could "hold applications in abeyance for decades without providing any reasoned basis for doing so." *Fu v. Gonzales*, 2007 WL 1742376 at *3 (N.D. Cal. May 22, 2007). "While it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have discretion to decide not to adjudicate at all." *Alkeylani v. DHS*, 2007 WL 2800380 at *4 (D. Conn. Sept. 20, 2007) (citing *Tang v. Chertoff*, 493 F. Supp. 2d 148, 155 (D. Mass. 2007)).

    1.    <u>According to the Immigration Services and Infrastructure Improvements Act of 2000, the delay in this case is unreasonable *per se*</u>

Concerned about excessive delays in adjudications of immigration benefits, Congress discussed the subject and gave a clear statement about acceptable processing times in "The Immigration Services and Infrastructure Improvements Act of 2000." Congress found that processing times for immigration benefits had been unacceptably long with applicants waiting as long as three to four years to obtain adjustment to permanent resident status. So they set a reasonable expectation base. "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application…" 8 U.S.C. §1571(b).

USCIS publishes processing dates for each district office and service center on its website at http://www.uscis.gov/portal/site/uscis. The stated purpose of these notices is, in part, to provide

a clear indication of USCIS commitment to process cases within a certain cycle time. The November, 14 2007 processing report for the California Service Center clearly says that six months is the reasonable time in which to expect a decision on an application for permanent residency (Form I-485). The report is attached as Exhibit A.

### 2. There are no special factors which justify the delay

In examining the reasonableness of a processing delay, courts look to the "source of the delay-*e.g*., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *Singh v. Still,* 470 F. Supp. 2d 1064 (N.N. Cal. 2006) (citing *Saleh v. Ridge*, 367 F. Supp. 2d 508, 512 (S.D.N.Y. 2005) and *Bartolini v. Ashcroft,* 226 F. Supp. 2d 350, 354 (D. Conn. 2002). There is neither evidence nor any suggestion that Plaintiffs have in any way attributed to the delay by submitting incomplete or incorrect information or delaying the process on their own initiative. Neither USCIS nor the FBI has suggested that there are any facts or reasons presenting complex or unusual issues which might justify the delay. The only reason given for the delay is the completion by the FBI of the name checks.

Plaintiffs were fingerprinted three times over the past three and a half years. Plaintiffs were forced to be re-printed as a fingerprint check must be less than 15 months old at the time the application is decided. No explanation is offered as to why no decision was made. Plaintiffs are stuck on a merry-go-round of endless obligations reaching no end.

## V. CONCLUSION

Plaintiffs move this Court for Summary Judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The material facts are not in dispute and Plaintiffs have shown that they are entitled to summary judgment as a matter of law.

Plaintiffs have followed Defendants' instructions, paid the fees for their applications, and complied with all requests for fingerprints. They have done nothing to contribute to the years of delay in the adjudication of their applications.

Accordingly, Plaintiffs ask this Court to provide them the requested relief and order the FBI name checks to be completed and their applications for permanent residence be decided.

DATED: November 29, 2007                    Respectfully submitted,


                                            _____/s/_____
                                            MARTIN J. LAWLER